ON REHEARING
Before BROWN, GASKINS, DREW, MOORE and LOLLEY, JJ.
GASKINS, J.
h Mr. Gibbs was convicted of violating La. R.S. 30:2581 for intentional littering, for leaving a mobile home, that he had been transporting, on the side of the road after it began falling apart and starting grass fires. He left the mobile home in the possession of its owner.
While Mr. Gibbs was initially ticketed with a violation of La. R.S. 30:2531.3, which provides for civil penalties for commercial littering, he was charged by a bill of information for the violation of intentional littering under La. R.S. 30:2531, which provides for criminal penalties.
In our original opinion, the majority concluded that Mr. Gibbs should have refused to transport the mobile home *399 based on its condition; however, the evidence does not support the theory that Mr. Gibbs should have known it was likely to deteriorate upon moving it. Jerry Moore, who helped Mr. Gibbs move the trailer, testified as follows, in response to the question, “[Y]ou require that, it be in suitable shape to be road worthy?”:
A. Oh, yes, sir. They had wanted it to be that way, or you wouldn’t be moving it.
While testifying, Mr. Gibbs answered questions regarding the condition of the trailer:
Q. Okay, Did you look it over before you hooked your truck up to it, to drive away?
A. I can’t tell if the metal is bad on it or not, but I looked at it, yes.
Q. Did it appear to be in poor condition to you; were you concerned that it might break?
A. No.
Q. Did you have a conversation with Mr. Harris about the condition of the trailer at anytime?
IgA. No.
Q. So you didn’t ask him, is this trailer in good shape, it is going to break on me while I’m driving down the road?
A. If I wouldn’t know, he wouldn’t know, either, but I didn’t ask him.
The record does not support a finding that Mr. Gibbs should have known the trailer was not roadworthy.
La. R.S. 30:2531 contains an inference that the driver of the conveyance disposed of the litter. Yet, testimony showed that Mr. Harris, the mobile home owner, had possession of it when it was left on the side of the road. Jerry Moore explained:
Q. And Mr. Harris was present.
A. Yep.
Q. Did Mr. Harris indicate to you what he expected you all to do?
A. Mr. Gibbs told him to get it fixed, and then we’ll come back and pull it. We got it off the road and everything.
Q. Did Mr. Harris agree to that?
A. Uh-huh.
[[Image here]]
Q. It was your understanding that Mr. Harris owned the trailer?
A. Yes.
Q. Okay, and that he was going to have to take some actions before Mr. Gibbs could tow it any further?
IsA. Uh-huh. Yeah. And Mr. Gibbs told him that when you get it fixed, give us a call, and we’ll come back and move it.
Q. Did Mr. Harris agree to that?
A. Uh-hum.
Mr. Gibbs’ testimony about Mr. Harris taking possession of the mobile home was as follows:
Q. Mr. Gibbs, just to be clear, Mr. Harris returned once the damage to the trailer made it impossible for you to continue what you had been hired to do, right?
A. Correct.
Q. And you made Mr. Harris aware of this, right?
A. Well, yes. It was obvious. I mean, it was on the ground, yes.
Q. And you removed your truck from the trailer while Mr. Harris was present?
A. Yes.
Q. And he knew that he was going to have to take further action or repair to have that trailer moved by you.
A. I told him that, yes, sir.
Q. And he agreed to that?
*400 A. Yes.
Q. As your witness stated, that was your understanding as well?
A. Right.
Q. And he was to call you when he made those necessary repairs or accommodations?
A. Right.
|4Q. Did he ever call you back?
A. No.
This testimony overcame any inference that Mr. Gibbs was in possession of the mobile home when it was “littered” on the side of the roadway. Had Mr. Harris, or any other witness, testified to a contrary conversation or sequence of events, the trial court could have made a credibility call as to whether Mr. Gibbs was in possession of the mobile home when it was left by the roadside. Mr. Harris did not testify; consequently, the only evidence before the court was that Mr. Harris was the one possessing the mobile home when it was left on the highway. The testimony of Mr. Moore and Mr. Gibbs shows that they were not able to transport the mobile home. Should we find that Mr. Gibbs had a responsibility to spend $3,000 and tear up the mobile home without the owner’s approval? Not under the evidence presented.
We reverse the judgment of conviction against Mr. Gibbs.
REVERSED.
LOLLEY, J., dissenting with reasons.
DREW, J., dissents for the reasons assigned by Judge LOLLEY.